## DIRECTED VERDICT WHERE ASKED BY BOTH SIDES.

Common Pleas Court of Hamilton County.

CLARA L. HALSTEAD, ADMINISTRATRIX OF THE ESTATE OF MAR-
SHALL HALSTEAD, DECEASED, v. THE MANHATTAN
LIFE INSURANCE COMPANY.*

Decided, 1912.

*Life Insurance—Payment of Premium Note in Dispute—Forfeiture of
Policy a Consequence of Non-Payment—Instructed Verdict Asked
by Both Sides—Court Directs for the Plaintiff—Parties Concluded
by the Fnding Made—Waiver as to Notice for Inspection of Docu-
ments.*

1. The court was of the opinion, upon the evidence submitted in this
   case, that the premium note in issue was paid within the pre-
   scribed time and the policy of insurance on the life of the de-
   cedent was thereby saved from forfeiture; and both parties to
   the action having moved for an instructed verdict, and the court
   being thereby clothed with the functions of a jury, its finding that
   the note had been paid and the direction to the jury to return
   a verdict for the plaintiff had all the force and effect of 'a find-
   ing by a jury, and no new evidence having been offered the verdict
   so returned will not be set aside on motion for a new trial.
2. The proffer at the time of trial by counsel on both sides of all the
   documents in their possession, except one letter which counsel
   for the plaintiff did not have, and never had and the possession

* Affirmed by the Court of Appeals in the following memorandum
    opinion:

"PER CURIAM.

"The court is of the opinion that the action of the trial court in
instructing a verdict for the defendant in error in the above entitled
action was correct.

"The great weight of the evidence shows, we think, that payment
of the premium note, due in July, 1907, was made by check, and this
is borne out by the course of business between the deceased and the
agent of the company at Washington.

"We do not think the question of the statutory notice under the law
of the state of New York can avail the plaintiff in error in any way,
for if our conclusion is correct that payment of the July premium·was
made. then the company could not cancel the policy.

"We find no error in the record and the judgment is affirmed."

of which he could not obtain, amounts to a waiver of the objection to the documents on the ground that notice for inspection had not been complied with.

*C. D. Robertson* and *Ben B. Dale,* for plaintiff.
*Robert Ramsey,* contra.

Swing, J.

This case is before me upon a motion to set aside the verdict and grant a new trial.

At the close of all the evidence, a verdict was instructed by the court in favor of the plaintiff for the amount of a policy upon the life of Marshall Halstead, deceased, both parties having moved for an instructed verdict.

In passing upon the motion of the plaintiff and defendant for an instructed verdict, I found that the Manhattan Life Insurance Company, the defendant, is a corporation organized under the laws of the state of New York, and that the policy of life insurance sued upon was issued by that company to Marshall Halstead in the state of New York, and that he was at the time a resident of that state, and that he continued so far as the evidence shows to be a resident of that state up to July, 1907, when the policy was canceled or ordered canceled by the company for the non-payment of a note given for a part of the premium due for that year, the time of payment of which had been extended by that note and other notes from January, 1907, until April, July and October, 1907.

It appeared that the statute of New York, affecting insurance companies, provides in substance that no insurance company doing business in that state shall have power to cancel a policy for the non-payment of a premium, unless notice has been given in writing to the insured at least fifteen days before the premium becomes due and payable of the time when it will become due and of the intention of the company to cancel the same if not paid when due or within one year from the time the premium became so due and payable. It has been held that there can be no waiver by the insured of the received notice, and that the company pleading the cancellation of the policy must allege the giving of the notice.

I stated in passing upon the motions to instruct a verdict that Marshall Halstead was not only a resident of the state of New York at the time the policy was issued, but also in July, 1907, when the note given for the deferred payment of the premium became due. At that time one statement made by Mr. Robert Halstead upon the witness stand and another statement made by Mrs. Clara L. Halstead, the widow of Marshall Halstead, and his administratrix, plaintiff in the case, escaped my memory. I stated in substance that the evidence showed that Marshall Halstead, while he spent a good deal of time in Cincinnati, Washington and in Pennsylvania and elsewhere, had a residence in New York City in July, 1907. Mr. Robert Halstead testified as follows:

"Q. Now where did your brother keep his bank account during those years from 1902 up to his death? A. The Mercantile National Bank of New York.

"Q. The Mercantile National Bank of New York? A. The Mercantile.

"Q. How? A. The Mercantile.

"Q. Well, what was his address in New York? A. 45 West 68th.

"Q. Street? New York? A. Yes."

He further testified that his brother spent some time in Washington, some in Cincinnati; some in Pennsylvania and was for a time at Birmingham, England, as United States Consul there. It was to that evidence I referred and which I had in my mind when passing upon the motions for an instructed verdict. In examining the record I find that Mrs. Clara Halstead testified subsequently that Marshall Halstead "lived after he was married, after he returned from his wedding trip" (that is, after June, 1907) "on Walnut Hills in Cincinnati" and the testimony shows that he and his wife were away from Cincinnati from sometime in June, 1907, when he was married, until September, 1907, on a wedding tour.

At another place Robert Halstead testified on cross-examination that "Marshall Halstead's home was on West Fourth street (Cincinnati) before he was married; * * * after he came back from England."

I was in error in saying at the time that there was no evidence to show that Marshall Halstead had ever changed his residence from the state of New York where it was at the time of the contract of insurance. There was the evidence I have quoted on the subject.

The question of Marshall Halstead's residence in July, 1907, was of importance in the case, because no evidence was offered that any notice such as the statute of New York requires had been given before the premium came due in January, 1907, and it was claimed by the defendant company that if Marshall Halstead was a non-resident of the state of New York in July, 1907, when the note came due, the company was not bound to give him notice under the statute; that it was not bound to give notice to persons not residents of the state of New York.

I stated at the time that as he was a resident of the state of New York in July, 1907, and there was no evidence of the notice required by the statute having been given before January, 1907, the defendant company had no power to cancel the policy for non-payment of premium in July, 1907.

It was claimed by counsel for the plaintiff that whether the notice required by the statute was given prior to January, 1907, or not, the company was bound to give notice fifteen days before the note became due, July, 1907, and that whether Marshall Halstead was then a resident of the state of New York in July, 1907, or not.

Upon the contention of counsel for plaintiff I did not pass at the time and it is still a question in the case.

Counsel for the defendant after I had passed upon the motions for an instructed verdict, expressed himself as confident that he would be able to show, if he had the opportunity, that the notice was given prior to January, 1907, and upon the argument of the motion for a new trial still expressed confidence and stated the expectation that he would be able to furnish such evidence before the motion for a new trial should be passed upon, but no such evidence has been produced by him. But he did show by affidavits upon the motion for a new trial that there was other and stronger evidence of the fact that Marshall Hal-

stead was in July, 1907, and had been during all of that year, a *bona fide* resident of the city of Cincinnati, Ohio, showing that it could be proved by the marriage records in the Probate Court of Hamilton County, Ohio, that Marshall Halstead stated under oath in his application for a marriage license in June, 1907, that he was a resident of Cincinnati, and by the poll books of the election in Cincinnati in November, 1907, that Marshall Halstead voted in Cincinnati as an elector, which implied a residence in Ohio for one year prior to that time.

These facts, the truth of which it would seem can not be questioned, would prove that Marshall Halstead regarded himself as and was a resident of Cincinnati, Ohio, during that year 1907.

These facts leave open the question of law as to whether the insurance company, having given no notice under the statute to Mr. Halstead prior to January, 1907, was bound to give him notice prior to July, 1907, of the time when his note would be payable and of the intention to cancel the policy if not paid. That note provided that the policy should be void if unpaid when due.

The statute of New York among other things provides that the notice should be given to one resident of the state of New York when insured, "at his last known address" in that state; and it is contended before me now that even though he was a resident of the state of Ohio in 1907, he was entitled by a proper construction of that statute to have such notice sent to "his last known address" in the state of New York; and especially, as it was shown by the testimony of Robert Halstead, above quoted, that in 1907 he did still have an address in the city of New York, to-wit: 45 West 68th street, New York City.

I very much doubt whether the statutory notice was necessary to Mr. Halstead as a resident of the state of Ohio in July, 1907, but in the view I take of the case as it stands at this time, I am of opinion that the question is not material, for the reason that the case was submitted to me by both parties by their motions made at the close of the evidence for an instructed verdict; that is, that the case was submitted to me upon the whole merits, the insurance company having attempted to cancel the policy for the

non-payment of the note that was due in July, 1907, and it being a question of fact as to whether that premium note was paid or not.

It was claimed by the plaintiff that that note had been paid by a check of Marshall Halstead sent to the managing agent of the company in Washington City, in May, 1907. It was shown in the evidence that Mr. Halstead had been in the habit of paying by check, and it was admitted by counsel for defendant at the trial that payment by check would under the circumstances be a good payment, and it was stated that no defense was urged upon the ground that the payment, if made, was made by check.

In passing upon the motions for an instructed verdict I stated that I thought the greater weight of the evidence showed—that it was probable from the evidence—that the payment was made by check, and that upon that issue the plaintiff would be entitled to a verdict and at that time stated the reasons for such conclusion which I will not now repeat.

Upon further consideration of the evidence—that is as to the fact of payment—I am still of opinion that the greater weight of the evidence is in favor of the claim that payment was made. The fact that makes most against that view is that Marshall Halstead failed to answer certain letters written to him by the managing agent at Washington and by the actuary of the company, both letters being in, I think, December, 1907, suggesting that he have his policy, which they said had been canceled, reinstated. But I thought then and still think that under all the circumstances, considering Mr. Halstead's lax habits of business, the fact that he did not answer those letters is not sufficient to outweigh the evidence of the payment, and that Mr. Halstead had a right to rely and might have relied upon the fact that the premium had been paid in July, and I have further considered the fact of his death so that no explanation of his failure to answer the letters which he might have had could be given.

I think that the most that can be said of the defendant's contention as to the weight of the evidence is that there is some uncertainty about it.

In the case of *First National Bank* v. *Hayes & Sons,* 64 O. S., 100, it is said in the syllabus:

"Where at the close of the evidence in a case, each party requests the court to instruct the jury to render a verdict in his favor, and the parties thereby clothe the court with the functions of a jury, and where the party whose request is denied does not thereupon request to go to the jury upon the facts, the verdict so rendered should not be set aside by a reviewing court unless clearly against the weight of the evidence."

This case was argued to me upon the motions for an instructed verdict upon the whole evidence, and I was asked by counsel for plaintiff in argument to instruct a verdict in favor of the plaintiff upon the evidence as to the payment, and I was not requested by counsel upon either side to submit the question of fact as to the payment to the jury.

Our Supreme Court in the opinion in *First National Bank* v. *Hayes & Sons, supra,* quoted from *Beutelle* v. *Magone,* 157 U. S., 154, where a like request had ben made as follows:

"This was necessarily a request that the court find the facts and the parties are therefore concluded by the finding made by the court upon which the resulting verdict was given."

Also, *Thompson* v. *Simpson,* 128 N. Y., 270, to the same effect. Our Supreme Court then say, page 102:

"The question seems new in this state and it is possibly from the fact that it will seldom happen that at the close of the evidence each party will move the court for a direction of the verdict in his favor, but it seems conformable to reason that where it is done each party must have intended to submit the case to the court for its finding upon the facts as well as the law and when in this case the party against whom a verdict is rendered does not ask to have the case submitted to the jury he can not be heard to say that there was error because there was some evidence tending to support the issues in his favor. In such case the finding of the jury in accordance with the instructions of the court should be given the same consideration as if it had been rendered without such instruction."

I think it worth while to set out here the quotation above referred to from *Thompson* v. *Simpson,* 128 N. Y., 270:

"The effect of a request by each party for a verdict in his favor clothes the court with the functions of a jury, and it is well settled that in such case where the party whose request is denied does not thereupon request to go to the jury upon the facts, a verdict directed for either party stands as of a finding of the jury in the absence of any direction, and the review in this court is governed by the same rules as in ordinary cases rendered without direction."

(See also *Richter* v. *Phoenix B. & L. Co.*, 7 C.C.(N.S.), 360, and *Gilligan* v. *Supreme Council Royal Arcanum*, 5 C.C.(N.S), 471).

Counsel for the defendant, after the decision upon the motions to instruct a verdict did ask "that the case be *reopened* for further proof," but that was for further proof upon the question of residence of Marshall Halstead in 1907.

No request was made to submit the question of fact as to the payment to the jury, and I had already stated in the presence of the jury the view I took of the evidence on that question, although I had previously stated that if that were the only question in the case I would submit it to the jury.

As I decided to instruct the verdict, and as I did instruct it, and stated my views of the weight of the evidence upon the question of the payment, I think in view of the authorities upon the subject and in view of the fact that I am still of the same opinion as to the weight of the evidence, the verdict should be upheld.

There is one other question that has been submitted to me. Counsel for the defendant objected at the trial to the admission of letters and checks and of all documentary evidence offered by the plaintiff, and stated at the outset that notice had been given by counsel for the defendant to counsel for the plaintiff prior to the trial for an inspection of all documents which the plaintiff proposed to offer in evidence, which notice had not been complied with.

It was admitted by counsel for plaintiff that they had not complied with such notice before the trial. There was considerable discussion between counsel upon the subject and it was contended by counsel for the plaintiff that the amended pe-

tition filed subsequent to the giving of the notice· made new
issues that would call for documentary evidence not necessary
· ' ·'· ·:---- the notice was given under the original petition, and
that a new notice should have been given.

Particular question was made as to a copy of a letter of Miss
Van Name to Mr. Hendricks, the managing agent of the com-
pany in Washington. Counsel for the plaintiff offered a letter
written by Mr. Hendricks to Miss Van Name in answer to a
letter by Miss Van Name to him. Counsel for the defendant in
the aforesaid discussion expressed a reluctance to ask a con-
tinuance because the notice had not been complied with, and said,
"In order to facilitate matters and show my disposition, will
you produce to me a copy of Miss Van Name's letter to which
this is a reply (reply, the Hendricks letter to Miss Van Name?)"
to which counsel for the plaintiff, Judge Robertson, made reply:

"I want to say to you gentlemen, now and applicable to all
the papers that are there, we have sifted out and supplied these
letters and given you all that we have *pro* and *con* having any
bearing on this thing whatever. We know nothing about that
letter. That came from you, you must know about it."

Counsel for the defendant:

"We of course know about it in Washington.
"The Court: 1 understand you to say now that you are will-
ing to produce to Mr. Ramsey all those papers, letters and docu-
ments which you wish to introduce in evidence, all that you have
in your possession pertaining to the case, but that particular let-
ter which he has just asked you about, you haven't in your
possession and you don't know anything about."
"Mr. Robertson: That is correct, sir.
"Mr. Ramsey: That isn't the whole point. If I had this let-
ter produced to me I could have had an opportunity of commu-
nicating with the Washington office and gotten the letter to
which this is a reply. I am just as anxious as they are to sub-
mit this case on the merits and submit it right now. I should
regret it as much as they would should we have to have a con-
tinuance. If they will state the substance of the letter to which
that is a reply I may admit it.
"Mr. Robertson: Personally I have no knowledge about her,
but that we have hunted for the letter and correspondence to

that manager and we have not found it or anything amongst his papers. We have brought every paper relative to that.

"Mr. Ramsey: Is Miss Van Name here and will she testify?

"Mr. Dale: No; she was a member of the household at the time, a cousin of Mr. Halstead's in Cincinnati. She happened to be here at that time.

"Mr. Ramsey: I have had the Washington office search for any correspondence with Mr. Halstead, but they have none from anybody by the name of Van Name. I suggest that they offer the correspondence, whatever documents they have, one at a time and we will take a position with reference to each one. The defendant admits upon the record that it seeks no advantage in this case and claims no forfeiture upon the ground that the company and the agent were not authorized to take checks."

After that the letters and checks were offered and objected to generally and the objections were overruled and the defendant excepted.

My understanding from all that was said by counsel at the time is that upon the proffer of all the documents in the possession of counsel for the plaintiff and counsel for the defendant at the time of the trial, except the letter written by Miss Van Name, which counsel for the plaintiff did not have and could not find and never had, the objection to documents on the ground that the notice for inspection had not been complied with was intended to be waived, and the case proceeded with that understanding.

The letter from Miss Van Name to Hendricks was not produced at this trial; was not offered in evidence for the reason that the plaintiff did not have it, and there was evidence that no copy of it had ever been kept, and indeed it should have been in the possession of Mr. Hendricks, the agent at Washington, if it had been preserved.

The motion for a new trial will be overruled.